**UNITED STATES of America**

v.

**Robert H. HAINES, III.**

**No. 3:95cr186 (JBA).**

United States District Court,
D. Connecticut.

May 3, 2007.

Christine L. Sciarrino, U.S. Attorney's Office, New Haven, CT, Nora R. Dannehy, U.S. Attorney's Office, Hartford, CT, for United States of America.

**RULING ON MOTION FOR RELIEF FROM JUDGMENT AND MOTION TO MODIFY JUDGMENT OR FOR OTHER RELIEF [DOCS. ## 74, 79]**

ARTERTON, District Judge.

Defendant Robert H. Haines, III was sentenced on August 23, 1996 and a Judg- ment was entered against him ordering, *inter alia,* restitution in the amount of $325,583.05, the balance of which as of August 22, 2006 was $483,486.30 (including interest).[1] Subsequently, the Government reduced defendant's "entire criminal debt to a civil judgment by recording various liens pursuant to 18 U.S.C. § 3613," *see* Appl. Writ of Exec. [Doc. # 56] ¶ 2; on December 20, 2005 the Court issued a Writ of Execution on defendant with respect to any funds defendant was to receive from pending civil litigation initiated by plaintiff in Tennessee, *see* Writ [Doc. # 58]; and on January 25, 2007 the Court granted the Government's Motion for Turnover of Funds, ordering that the escrow agent holding defendant's proceedings from the Tennessee litigation turn over such pro- ceeds, to be applied to defendant's restitu- tion balance, *see* Order on Mot. for Turn- over [Doc. # 70] at 2. Defendant moved for reconsideration of that Order, which Mo- tion was denied after a hearing on Febru- ary 16, 2007. *See* Order on Mot. for Re- cons. [Doc. # 76].

Defendant has now filed a Motion for Relief from Judgment [Doc. # 74] and a Motion to Modify Judgment or for Other Relief [Doc. # 79] contending, *inter alia,* that the Judgment is void, that the Judg- ment has been satisfied, that it is no longer equitable that the Judgment have prospec- tive application, and that the Judgment is excessive. Defendant advances similar ar- guments in both Motions and the Court will address each *seriatim.*

As a preliminary matter, defendant contends that his Motions are timely, even though they were filed more than ten years after Judgment was entered, be-

1. In February 2007, defendant paid approxi- mately $31,000, reducing the balance to ap- proximately $450,000 plus interest.

cause the Government more recently reduced his criminal restitution debt to a civil judgment pursuant to 18 U.S.C. § 3613, entitling him to seek relief under applicable federal or state law, including Fed.R.Civ.P. 60(b) providing for relief from judgment in certain enumerated circumstances. Defendant provides no authority, however, for his claim that the Government's invocation of one of the civil remedies available to it in enforcing criminal monetary judgments entitles *him* to relief from his criminal judgment predicated on the Federal Rules of Civil Procedure, nor does 18 U.S.C. § 3664(*o*) (providing that a restitution order is a final judgment), which lists ways *in which an* order of restitution may be corrected, amended, or modified (*e.g.*, on appeal, for a demonstrated material change in economic circumstances), provide that a defendant may seek relief on the basis of civil rules when the Government elects a civil remedy as a means for enforcement. Even if defendant's position on timeliness and invocation of Fed.R.Civ.P. 60(b) were correct, his arguments fail on their merits.

First, defendant contends that the Judgment is void because there is no victim since the restitution ordered has already been recovered by Southeast Bank & Trust Co. when its assets and liabilities were purchased by First Union Bank of Florida (post-sentencing). This argument dovetails with defendant's claim that the Judgment is excessive because no actual loss has been shown. The "primary and overarching" purpose of the Mandatory Victim Restitution Act "is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state

of well-being." *United States v. Boccagna,* 450 F.3d 107, 115 (2d Cir.2006). While Southeast Bank's assets and liabilities (including defendant's restitution debt) may have been purchased by another entity, that fact does not demonstrate that Southeast Bank has been "made whole" because, as the Court explained when defendant's counsel previewed this argument at the February 2007 hearing, some value was necessarily lost as a result of defendant's unpaid restitution, *e.g.,* Southeast Bank/its successor being unable to recoup as high a purchase price for its assets, or First Union Bank purchasing assets made less valuable by defendant's unpaid debt. Moreover, although the primary purpose of the restitution statute is to provide compensation, § 3664(f)(1)(B) nevertheless provides: "In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." This provision suggests that, although Southeast Bank's assets have been purchased, restitution is still appropriate. This same rationale explains why defendant's argument that the Judgment is excessive due to an absence of loss is unpersuasive: defendant's criminal conduct resulted in a loss of value in Southeast Bank's assets, which value has not been restored because defendant has not satisfied his debt.[2] Moreover, defendant's reference to *United States v. Fleischer,* 120 Fed.Appx. 865 (2d Cir. 2005), is inapposite because the trial court's restitution order in *Fleischer* was vacated on appeal upon a finding that it was not limited to "amounts directly

---

**2.** The Court declines defendant's request for discovery on this issue "for the purpose of confirming that there is no outstanding debt," Def. Mot. to Modify at 5 n. 14, because, regardless of whether either bank currently considers the restitution defendant was ordered to pay a "debt," it cannot be disputed that the conduct resulting in defendant's offense of conviction resulted in a loss of value to Southeast Bank and which has not been replaced.

caused by the conduct composing the offense of conviction." In this case, defendant cannot dispute that the loss reflected in the restitution order was directly caused by his offense conduct. Moreover, the *Fleischer* court ultimately remanded, directing the trial court to enter a new restitution order reflecting the restitution amount the defendant had agreed to in his plea agreement; the restitution ordered here was agreed to by Mr. Haines in his plea agreement.

■ Next, defendant argues that the Judgment is void because it has an unconstitutional effect, inasmuch as he claims that the Court's December 2005 Writ of Execution constituted a garnishment of 100% of his wages, rather than the 20% originally ordered. However, as reflected in the Court's Order on Motion for Reconsideration [Doc. # 76], this argument has already been rejected by the Court, finding that defendant's claimed "earnings" from a personal services contract that were reflected in the settlement proceeds of the Tennessee litigation did not fall within the exception of 28 U.S.C. § 3203(a) and thus were properly subject to the Court's Writ of Execution. *See* Order on Mot. for Recon. (citing *United States v. Moore*, No. 03cr78 (SRU), 2006 WL 1405578 (D.Conn. May 12, 2006)).

■ Defendant also claims that the Judgment has been satisfied, arguing that "there can be but one satisfaction of a judgment" and "[s]ince the funds [constituting defendant's settlement proceeds from the Tennessee litigation] were levied upon and deposited with the Court in accordance with the Writ of Execution, Mr. Haines' debt was thereby satisfied." Def. Mot. to Modify at 6 & n. 17. Defendant's argument reflects a misinterpretation of the terms of the Writ. While the Writ provides that "the amount of the levy shall not exceed the amount of the defendant's debt, plus [ ] costs and expenses" and that "the amount levied shall be deposited with the Clerk of the United States District Court in satisfaction of the defendant's debt," it does not state that such levy will fully satisfy defendant's debt. Rather, the clear meaning of the terms of the Writ are that the funds levied will be applied towards defendant's debt, and any amounts in excess of the restitution amount should not be levied. Defendant's argument that the entire Judgment has been satisfied because funds constituting only a fraction of that debt were levied does not find support in the plain language of the Writ itself, is inconsistent with the restitution statutes which contemplate payment in full, and, as the Government observes, would provide a disincentive to the Government to pursue any enforcement remedy that would result in anything less than full recovery of the debt.

■ Lastly, defendant argues that it is no longer equitable that the Judgment should have prospective application given his age, his service of a year of imprisonment, his inability to obtain or maintain any gainful employment, and the "exorbitant" interest on the Judgment. Defendant claims that his "economic circumstances have changed drastically since the Judgment was enforced against him in 1996," detailing his bankruptcy filing in 1998, his lack of current employment and the fact that his only current income is Social Security payments, his and his wife's credit card debt, and the mortgage status of his Florida residence and a Tennessee investment property. Defendant also explains that his physical condition has changed since sentencing and claims that "[a]ny non-physical-related attempts to find work have been rejected because of his felony conviction. Any license-required work such as teaching, real estate sales/managing, accounting, etc., is, thus,

prohibited to him." Def. Mot. to Modify at 8. All of these concerns, however, were foreseeable (perhaps even inevitable) at the time of sentencing—defendant's difficulty in obtaining employment and his concomitant financial problems are typical consequences of being convicted of a felony. However, while defendant lists several categories of positions requiring a license that may be unavailable to him in light of his conviction, there are certainly other positions which do not require such a license and for which a felony conviction would not be an automatic disqualification. Defendant's suggestion that the Court's enforcement of the restitution order is somehow a bar to his obtaining gainful employment, coupled with his counsel's suggestion at the February 2007 hearing that defendant would have no incentive to obtain employment if the Government were permitted to garnish 100% of his earnings, reflects a misunderstanding of the Court's holding with respect to the Tennessee Litigation proceeds. The Court found that those proceeds did not fall within the exception of 28 U.S.C. § 3203(a) for "earnings ... in the possession, custody, or control of the debtor's employer" but, pursuant to the Judgment, if defendant were to earn regular earnings, they would be garnished at 20%, not 100%.[3]

Accordingly, there is no basis for the relief sought by defendant and his Motions [Docs. # # 74, 79] are DENIED.

IT IS SO ORDERED.

---

**3.** Although defendant characterizes his Motions as interposed pursuant to Fed.R.Civ.P. 60(b), the Court observes that 18 U.S.C. § 3664(k) gives the Court the authority to modify an order of restitution by "adjust[ing] the payment schedule, or requir[ing] immediate payment in full, as the interests of justice require," on the basis of a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." As detailed above, however, defendant here has not demonstrated such a material change in economic circumstances since sentencing warranting such modification.